Barnes, to the said Anson Hazlewood, in and by virtue of each and all of the deeds hereinbefore referred to, reserving to myself, the balance of the mineral rights in said lands other than such as was conveyed by said deeds.

Petitioner retained all of the $16,000 originally paid by Anson Hazlewood.

E. Y. Jennings on September 19, 1924, made an affidavit that he regarded his relation to the real estate in question as that of trustee and that he did not regard his quitclaim deed as a gift.

### OPINION.

Docket No. 2584.  Decided November 9, 1926.

SEVERABLE CONTRACTS.—Written instruments evidencing contractual relations between the petitioner and the Board of Water Commissioners of the City of St. Paul, Minnesota, *held* to evidence two separate contracts upon which the contractor's losses may be taken in the accounting period within which work upon each separate contract was completed.

*G. S. Macartney, Esq.,* for the petitioner.
*W. H. Lawder, Esq.,* for the respondent.

The petitioner complains of a certain deficiency letter dated February 15, 1925, asserting a deficiency in income and profits taxes for its fiscal year ended March 31, 1919, in the amount of $1,214.84, and an overassessment for its fiscal year ended March 31, 1920, in the amount of $310.18.

The deficiency for the fiscal year ended March 31, 1919, results from the Commissioner's holding that losses sustained by the petitioner must be accounted for as of the fiscal year ended March 31, 1920.

FINDINGS OF FACT.

The Geo. J. Grant Construction Co. is a Minnesota corporation, having its principal office at St. Paul, and, during the period under consideration, was engaged in a general contracting and construction-work business.

In December, 1916, the Board of Water Commissioners of the City of St. Paul advertised for bids for the construction of a high service reservoir and earth embankments surrounding such reservoir. The specifications accompanying such call for bids were as follows:

| Item | Description | Quantity |
|---|---|---|
| 1 | Clearing and grubbing | 4¼ acres. |
| 2 | Earth Excavation | 90,620 cu. yds. |
| 3 | Clay Blanket under Reservoir | 14,500 cu. yds. |
| 4 | Sprinkling and Rolling Foundations and Embankments | 10,552 Ton. Mi. |
| 5 | Backfilling outside of walls | 1,700 cu. yds. |
| 6 | Earth Embankments and Fill over Structures | 99,800 cu. yds. |
| 7 | Seeding | 4½ acres. |
| 8 | Sodding | 12,800 sq. yds. |
| 9 | Concrete Inverted Groined Arch Floor | 4,033 cu. yds. |
| 10 | Concrete Groined, Cloistered and Barrel Arch Roof | 3,831 cu. yds. |
| 11 | Concrete Flat Slab Footings for Outside Walls | 2,580 cu. yds. |
| 12 | Concrete Outside Wall-Slabs and Buttresses | 3,049 cu. yds. |
| 13 | Concrete Division or Center Wall | 2,734 cu. yds. |
| 14 | Concrete Columns | 1,503 cu. yds. |
| 15 | Concrete Conduits and Sumps | 317 cu. yds. |
| 16 | Concrete Inlet and Outlet Gate Chambers and Aerator | 617 cu. yds. |
| 17 | Concrete Special Finishing on Floors | 95 sq. yds. |
| 18 | Steel Reinforcement: | |
|  | ⅜″ Steel rods (square) | None. |
|  | ½″ Steel rods (square) | 27,567 lbs. |
|  | ⅝″ Steel rods (square) | 154,383 lbs. |
|  | ¾″ Steel rods (square) | 579,332 lbs. |
|  | ⅞″ Steel rods (square) | 124,267 lbs. |
|  | 1″ Steel rods (square) | 204,380 lbs |
| 19 | Miscellaneous Steel and Wrought Iron Work: | |
|  | Iron____ 3,871 | |
|  | Steel____ 12,640 | 16,510 lbs. |
| 20 | Copper and Asphalt Expansion Joints (Copper) | 1,267 lbs. or 650 lin. ft. |
| 21 | Wooden Expansion Joints in Footings, etc | 19,300 lin. ft. |
| 22 | Setting Sluice Gates: | |
|  | 48″ Circular Flanged Gates | 8. |
|  | 48″ x 48″ spigot in Concrete Sluice Gates | 2 |
| 23 | Settings Gate Valves: | |
|  | 48″ Double Hub Gate Valve | 1. |
|  | 24″ Flanged Gate Valve | 1. |
|  | 6″ Double Hub Gate Valve | 4. |
| 24 | Laying and erecting cast iron pipe and specials (6″ to 20″ diameters inclusive) | {1 T. Spec. {5″ Pipe. |
| 25 | Laying and erecting C. I. Pipe and specials (24″ to 48″ diameters inclusive) | {37″ Spec. {105″ Pipe. |
| 26 | Furnishing and erecting cast iron stop plank groove | 1 Ton. |
| 27 | Furnishing and erecting miscellaneous castings | 6,250 lbs. |

Thereafter the petitioner, having been found to be the lowest bidder, received an award for the construction work called for in words and figures as follows:

March 6, 1917

AWARD OF CONTRACT

F. B. 1119

The Contract Committee hereby awards the contract for furnishing all labor and material (excepting cement, reinforcing steel, gate valves, sluice gates and cast iron pipe and special castings) and constructing the High Service Rein-

forced Concrete Covered Reservoir at the end of Dale Street for the Board of Water Commissioners of the City of St. Paul, Minnesota, excepting Item Six of the bidding sheet, being earth embankments and fill over structure, to the George J. Grant Construction Company for the lump sum of $194,158.01 and the contract for earth embankments and fill over structure, known as Item Six is hereby awarded to the said George J. Grant Construction Company on the basis of cost plus fifteen per cent, in accordance with their modified bid of March 2, 1917, and at a total cost of not exceeding $51,896.00 and at a total aggregate cost for the complete contract not exceeding $246,054.01.

Approved : THE CONTRACT COMMITTEE

(Signed)      O. E. Keller

Jesse Foot

H. W. Austin

### MATERIAL AND SUPPLIES CONTRACT

THIS AGREEMENT, Made and entered into this 12th day of March A. D. 1917, by and between The George J. Grant Construction Company, a corporation, party of the first part, hereinafter designated as the Contractor, and the Board of Water Commissioners of the City of St. Paul, a municipal corporation, of the State of Minnesota, party of the second part, hereinafter designated as the City, WITNESSETH :

That in and for the consideration hereinafter mentioned, the Contractor hereby sells and agrees to furnish and deliver to the City all labor and material (excepting cement, reinforcing steel, gate valves, sluice gates and cast iron pipe and special castings) and construct the High Service Reinforced Concrete Covered Reservoir at the end of Dale Street, excepting Item Six of bidding sheet, being earth embankments and fill over structure, at lump sum of ($194,158.01), and agrees to construct and furnish earth embankments and fill over structure on the basis of cost plus fifteen per cent, at a price of not to exceed $51,896.00, in strict accordance with the plans and specifications thereof, and in accordance with the bid or proposal of the Contractor bearing No. 1119, submitted pursuant to advertisements, dated December 16th & 23rd, 1916, which specifications, bid or proposal, and advertisements are hereto attached and each and all made a part of this agreement.

The Board of Water Commissioners of the City agrees to pay to the Contractor as the consideration for the full and faithful performance of this contract, the sum of Two Hundred Forty Six Thousand Fifty Four and 1/100 (246,054.01) Dollars, which sum shall be payable solely out of the Water Fund, and at the times and in the manner provided for in the said specifications.

It is hereby agreed that the provisions of all ordinances of the City of St. Paul relating to contractors is hereby made a part of this agreement.

In Witness Whereof the City and the Contractor have signed this contract the day and year first above written.

The reservoir was completed in the late fall of 1918, when the city turned water into it, and it has been used ever since. By March 31, 1919, all work on the reservoir had been entirely completed. The work on the earth embankments, including the sodding and seeding, was completed during the petitioner's fiscal year ended March 31, 1920.

Upon the construction of the reservoir the petitioner sustained a loss of $43,240.96. Upon the construction of the embankments, etc.,

the petitioner sustained a loss of $53,759.04. These losses were largely due to an increase in laborers' wages from $2.50 to $6 per day. The petitioner received payments from the Board of Water Commissioners as the construction work progressed on the basis of 85 per cent of the amount of each item completed.

The petitioner kept its accounts and rendered its income-tax returns on the basis of completed contracts; it claimed its loss upon the construction of the reservoir for its fiscal year ended March 31, 1919, and claimed its loss upon the embankment construction for its fiscal year ended in 1920.

OPINION.

TRUSSELL: A study of the language of the award of contract discloses that the petitioner was to receive for the construction of the reservoir a fixed and definite amount as compensation, and that amount was $194,158.01. It further discloses that the work of building the embankments was to be done on the basis of the cost plus 15 per cent but not to exceed a total amount of $51,896. It thus appears that the contractual relations entered into between the petitioner and the Board of Water Commissioners contemplated the performance of one piece of work for a fixed and determined amount, and the performance of another piece of work upon an entirely different basis— cost plus 15 per cent, but limited to the maximum figure stated.

The record establishes that the advances made by the Board of Water Commissioners from time to time were computed upon 85 per cent of the proportion of the work of the two separate classes as reported completed.

Ruling Case Law, vol. 6, Contracts, sec. 246, relating to entire and severable contracts, among other things, says:

Where an agreement embraces a number of distinct subjects, which admit of being separately executed and closed, the general rule is that it shall be taken distributively, and each subject be considered as forming the matter of a separate agreement after it is so closed. If the part to be performed by one party consists of several and distinct items, and the price to be paid by the other is apportioned to each item to be performed, or is left to be implied under the law, such a contract will generally be held to be severable.

This doctrine of entire and severable contracts has frequently had the attention of the Supreme Court of Minnesota, in which State the petitioner has its domicile. In the case of *McGrath* v. *Cannon*, 55 Minn. 457; 57 N. W. 150, the court, among other things, said:

Whether a contract is entire or severable, like most questions of construction, depends on the intention of the parties, and must be determined in each case by considering the language employed and the subject-matter of the contract, and how the parties themselves treated it. One of the best statements of the law on the subject, and one often cited by the courts with approval, as that in 2 Pars. Cont. 648, which is: "If the part to be performed by one

party consists of several distinct items, and the price to be paid by the other is apportioned to each item to be performed, or is left to be implied by law, such contract will generally be held to be severable." As complete and legally accurate a statement of the rule as anywhere to be found is that of Mr. Justice Field in *Norris* v. *Harris*, 15 Cal. 226, viz: " A contract made at the same time, for different articles, at different prices, is not an entire contract, unless the taking of the whole is essential from the character of the property, or is made so by the agreement of the parties, or unless it is of such a nature that a failure to obtain a part of the articles would materially affect the object of the contract, and thus have influenced the sale had such a failure been anticipated."

This case has been cited and its reasoning followed by the same court in *Stauff* v. *Bingenheimer*, 94 Minn. 309; 102 N. W. 694; *Mulcahy* v. *Dieudonne*, 103 Minn. 352; 115 N. W. 636; *Duluth Log Co.* v. *Hill Lumber Co.*, 110 Minn., 124; 124 N. W. 967; *Blake* v. *Neils Lumber Co.*, 111 Minn. 513; 127 N. W. 450.

The record of this case conclusively establishes that the petitioner considered and treated its contractual relations with the Board of Water Commissioners of St. Paul as two separate and distinct contracts, and from the language used in the form of award of contract approved by the Board of Water Commissioners and also the language used in the supplemental material and supplies contract it seems to be plain that the Board of Water Commissioners regarded and treated the same contractual relations as being two separate and distinct agreements. The construction of the reservoir itself was to be performed and paid for at a fixed and stipulated amount of $194,158.01, while the construction and work of filling the earth embankments is separated from the construction of the reservoir and is to be paid for on an entirely different basis of cost plus 15 per cent, although limited to a figure of maximum cost to the Board of Water Commissioners.

We are, therefore, of the opinion that, when the petitioner entered into the contractual relations respecting the construction of the reservoir and the filling of the earth embankments, it undertook the performance of two severable and separate agreements, and that it properly kept its accounts on the basis of two separate contracts and is entitled to deduct the loss on the reservoir contract from its gross income in the year ended March 31, 1919, and to deduct its loss on the earth-embankments contract in the year ended March 31, 1920.

> *A redetermination of the deficiency in accordance with the foregoing findings of fact and opinion will be made upon 15 days' notice, pursuant to Rule 50, and judgment will be entered accordingly.*